and Bank and U.S. City of America, Mr. Turek, on Ms. Natchez's 15-minute preside, 5-minute for Mr. Turek, Mr. Sandberg's champion, for the account. Thank you, and good morning, Your Honors. I would like to reserve three minutes of my time for rebuttal. Your Honors, ABLE in this case is alleging a very straightforward fraud, and a fraud that can only occur in the context of FHA-insured loans. The fraud that we're alleging is simply this. U.S. Bank systematically and knowingly submitted claims for FHA insurance on foreclosed properties without first going through the FHA-specific procedures that are required, known as the loss mitigation steps. It did not begin that process, as the regulations require, by affirmatively going to the homeowner in a face-to-face meeting and then discussing with the homeowners plans to avoid foreclosure, allowing the homeowner to keep their home, but also saving the government a great deal of money for each foreclosure that could have been staved off. U.S. Bank, as the District Court correctly found, this is a fraudulent scheme within the meaning of the False Claims Act. These claims were false claims. The District Court, however, incorrectly found that these allegations were barred by the False Claims Act's Public Disclosure Bar. The Public Disclosure Bar, by its terms, applies only where substantially the same allegations or transactions. So can I ask you about that? Some of this is consistent with the facts, and some of this would be a hypothetical. So let's say the prior litigation, the consent decrees related to loss mitigation measures and dealt just with federally issued mortgages. Let's just say, hypothetically, that's what they said. So that's a hypothetical. It's not reality. And then let's say this complaint talked just about loss mitigation measures at that level of generality and just federally insured mortgages. I take it you would agree that would be a prior public disclosure that would bar the case. I'm thinking about your hypothetical right now. I take it in your hypothetical, the consent decree dealt with the key level of generality as loss mitigation measures and just federally insured mortgages. The lawsuit, the Keatam lawsuit, is just about loss mitigation measures and just about federally insured mortgages. In theory, depending upon what the prior consent order is I just gave you all the facts. That's all I have. Okay. If that's the case, if the prior consent decree purports to deal with all loss mitigation violations essentially writ large, then yes, we would be, then that would be a problem. That would be a problem. So in this case, the difference, the things that I think you think distinguish it is, well, the prior case didn't focus just on federally insured mortgages. It dealt with all mortgages. And then in this case, you say, well, it's true. We're talking about loss mitigation measures, but we're drilling down to some types of loss mitigation measures, say face-to-face meetings. That's your basic theory of the case, isn't it? I think we're not so technical as that. When you look at these claims that, for example, when you look at, for example, the articles dealing with loss mitigation and servicing issues for non-FHA insured loans, it's not simply that those were not insured by the government. It's that in those cases for non-FHA insured loans, the requirements we're speaking of don't even apply. There's no requirement for those loans that a bank make proactive steps to go to the homeowner. Didn't the prior consent decrees cover all types of mortgages, including federally insured mortgages? So it would, by implication, mean whatever the loss mitigation requirements are, you know, they're encompassed in that. Okay, now I. I think that. Yes. Okay. Well, no, because what the actual text of the public disclosure bar deals with is allegations. It doesn't deal with a remedy that theoretically could cover this. The fact, I mean. It deals with whether. I mean, this is more than an allegation. This is beyond an allegation. This is more notice, not less notice. Well, let me. More notice to the public. I just want. I want to make sure I understand Judge Sutton's question just correctly. You can often have consent decrees that, for example, say that a bank or other defendant thereby promises to comply with every applicable U.S. law. In fact, that's what happened in the OCC consent decree. I totally agree with you. You could have the level of generality be prior violations of law, and that would not prohibit a key template from coming in and talking about a specific type of violation of law. Your problem here, in my view, is the consent decree drills down pretty far. It's at loss mitigation measures. And it seems to me one of your theories is, well, that doesn't bar us from a KTM lawsuit as long as we focus on one type of loss mitigation measure. And that seems to me really hard to sustain. Let me make sure we're speaking about this. You're speaking about the OCC consent decree specifically? I just want to make sure. I don't need to talk about just one consent decree. I thought every single one of these things mentions loss mitigation measures. Well, they measure the ñ many of the documents that they've submitted mention something called loss mitigation, but that something called loss mitigation does not mean the same thing for non-federally insured loans that it does in this scheme. In this scheme, there are ñ If it only meant some loss mitigation, then presumably it would contain limiting language. I think the point is if it doesn't contain limiting language, then it would include any and all loss mitigation requirements. That the remedy could be construed that broadly does not mean that there's been any allegation. There's been no allegation of the specific wrongdoing that's described here. There's nothing in that. That's the key phrase, the specific. That's your key point. That's the whole thing you're doing. You're saying, listen, if you have a category, that doesn't bar us if the next time down we focus on one type of issue under that category. I think that's your theory of the case. It's just a level of generality issue. My problem is loss mitigation measures is a lot more specific than something that said U.S. Bank has been charged with violations of law. I agree with you. If it was at that level of generality, you could come in and bring a KTAM lawsuit that focuses on one type of violation of law. But this seems to me really slicing it very thinly, I guess is the way I'd put it. I would argue that saying that there have been violations of loss mitigation is not actually slicing it that thin at all if you're not distinguishing between the different program's requirements, which are fundamentally different. The requirement at issue here is the requirement that the bank proactively go to the homeowner and initiate with the homeowner these loss mitigation procedures. That did not come up. Your main one is face-to-face meetings. Is that the main one? Well, the face-to-face meetings are emblematic of that larger requirement that the bank be proactive, that it's the bank's responsibility to initiate. It's not that we do have – I don't know what you mean by it's the bank's duty to initiate. Loss mitigation by definition requires initiative. That's what it means. Yes. You're not adding anything when you say that. Well, here's what I'm adding. With respect to these other programs, and you'll see it in the consent decrees and in the other documents, it's the homeowner who goes to the bank and asks for a loan modification or forbearance or any of those other remedies, and then there's allegations that the banks misled them, for example, as to whether those were available and what the terms were. That is not our case. Our case is not the homeowners went to the bank and got bad information. Our case is in the FHA program, and only in the FHA program, the bank has to go to the homeowner and initiate that process, and the bank didn't do that. That requirement doesn't even exist in the other programs, and therefore it could not have been covered. No matter how broadly some decree says this covers all loss mitigation issues, that issue is not subsumed in a case that's about the loss mitigation for non-FHA loans. You're narrowing it to that one type of event, going to the home. I'm narrowing it to this. The bank's failure to take proactive steps with the homeowner to make loss mitigation happen in the absence of the homeowner going to the bank to get loss mitigation. That's what's specific to the FHA program, and the face-to-face contact is certainly a big part of that. As Hyda said, that guarantees sort of a minimum standard of effort. Just to make sure I'm following this, everything the U.S. Bank says is a prior disclosure, consent decrees and the like, you're saying not one of them covered federally insured mortgages. Yes. I want you to answer what I'm asking, not what you want to answer. It's not did they say that. It's did by its terms it potentially cover federally insured mortgages. What's the answer to that question? I think the answer to that question is they could potentially, the remedies could cover it. But we think as a matter of law, the statute is quite clear. It doesn't say do the remedies potentially cover. And you can see that, for example, in the quote that we gave you from the OCC decree. If you read that quote. Because it doesn't care about allegations of law versus remedies. It cares about disclosure and notice. That's what it's asking. But, you know, in terms of the purposes of the public disclosure bar, the fact that the U.S. Bank has agreed to do all these things under federal law, which, by the way, it had agreed to do before that consent decree, by that reasoning the violation had been disclosed before it ever entered into the consent decree because it already had that obligation. The question is was its wrongdoing disclosed, not was its obligation disclosed. And that's all the consent decree adds is an additional obligation to comply with these requirements it already had. Are you saying specifically should be, have been disclosed in order to comply with the The public disclosure bar? Well, let me give you a hypothetical that I think would have been enough. If you had news articles that said, you know, all around the country, U.S. Bank is systematically failing to proactively contact homeowners to do the face-to-face meeting and other requirements of the loss mitigation scheme. If you had news articles saying that, then, yes, from that you could probably infer that fraudulent claims were then submitted as a result. No such article appears, and I think that's Looking at the comptroller's report, the consent order says on its face it's responding to all the irregularities that were found by the comptroller. So there ought to be something in the comptroller's report that indicates that it was definitely not concerned with the type of loan about which you're concerned to what language in the comptroller's report should we look to confirm your assertion? Well, I guess I would flip that. I get to frame the question and you get to answer it. Well, I think, but the answer is there is nothing in the comptroller report that specifically speaks to FHA loss mitigation procedures. Where I'm going to disagree with you is what is the import of that? The import of that is that the comptroller was not focusing on it. Well, but if the comptroller was not focusing as narrowly as you are, that really doesn't get us very far because if the comptroller's allegations are broader, if you want to differentiate between a consent decree is giving notice and allegations is giving notice, then the allegations must be in the comptroller's report. I think the allegation itself of wrongdoing must appear in the comptroller report. It's not the case that everything the comptroller doesn't specifically mention and exclude is therefore publicly disclosed. That would be rather anomalous to say, as I understand it, that everything it didn't mention is therefore publicly disclosed. It had to specifically mention wrongdoing in order to not disclose it. That seems to me to have the public disclosure part. Just to make sure, maybe this is another way, a variation on the first question I asked you to see your theory of the case. Let's say the prior consent decrees talk always about loss mitigation measures but never drill down to types of loss mitigation measures that were violated. Just say in gross there was loss mitigation measure violations, and let's say it's even just about federally insured mortgages. And then the QTAM plaintiff comes along and says, ah, that didn't put us on notice because we're not complaining about loss mitigation measures in general. We're just complaining about the failure to initiate the face-to-face meetings. As I understand your theory of the case, you would say that QTAM plaintiff can go forward. Well, that would be a much I just want to hear yes or no on that. I know it's a hypothetical. It's not exactly this case. Isn't your theory of the case that that would not be a disclosure because the prior consent decree, the prior allegations, were only at the level of loss mitigation measure violations, not the specific type? I'm hard-pressed to give you a definite yes or no, but I will say that would be a much, much harder question. If there were actually something that spoke very generally to FHA loss mitigation failings, that would be a much harder case than we have here. So the only difference is that the prior stuff was about all types of mortgages, including federally insured ones. But the reason why that's different is because the programs, the requirements of loss mitigation, the potential for fraud are fundamentally different. All right. Your time's up. Thank you, Your Honors. All right. Mr. Schilling. Your Honors, I'm Daniel Aguilar for the United States' Amicus Curie. The parties I discussed potentially — Correct. You took time from the appellee. No, Your Honor. Our time was added on to the 15 minutes for each side. Okay. Okay.  I misunderstood, or I forgot what we were doing. No, of course you did. I mean, we made that decision at some point, but the way the case was called, it just — I understand, Your Honor. Is it appropriate for me to — Yeah, I think so. Wonderful. Mr. Schilling still has 15 minutes, and I'm not supposed to shut him up after 10, in other words. Okay, go. May it please the Court. Sorry. Daniel Aguilar for the United States' Amicus Curie. The district court correctly held that the complaint alleges a false claims act violation, and if this court reaches that part of the appeal, it should affirm that decision. U.S. Bank certified that it complied with all HUD regulations, including regulations that required it to engage in loss mitigation. If U.S. Bank tried to collect FHA insurance benefits without engaging in loss mitigation, that would violate HUD regulations, and U.S. Bank would be subject to a treble damages penalty that would return the claimed benefits to HUD. In short, relators allege that U.S. Bank presented HUD with a false claim and deprived the government of its benefit of the bargain. U.S. Bank's claim for insurance benefits implied that it had engaged in loss mitigation as required by law. There's two things about this issue. One, as you pointed out in your brief and just now, we don't have to resolve the issue. That's point one. Point two, isn't there a Supreme Court case that is addressing this? I mean, isn't that like a second reason not to address this point? Are we likely to get some guidance from the court on this point by June? That's correct, Your Honor, and it may very well make sense for this court, if it's to reach the implied certification theory of the case, to hold its decision until the Supreme Court issues its opinion in Universal Health Services v. Escobar. That case is currently scheduled for argument on April 19th, and there should be a decision by June. Barring a 4-4 procuring reaffirmance. I don't think it's going to decide the issue here. I'm sorry, Your Honor, I didn't hear. I don't think it's going to decide this issue of generality we've got here. I don't think necessarily that the Supreme Court's opinion would decide the particular issue in this case, but it is considering both the scope... Judge Merritt's asking whether it's going to decide the issue that your friend was just arguing, and the answer to that question is no. The case at the U.S. Supreme Court does not involve the public disclosure point. Correct, Your Honor. Sorry, I misinterpreted. What's the issue as to which cert was granted in the case that's before the Supreme Court? It was granted as to two questions. One was the scope of the implied certification theory and whether there can be a claim under the implied certification theory. The second was whether the implied certification theory, in terms of materiality, needs to be based on an express statement in the regulation that it is a condition of payment. Which has nothing to do with the issue we were so interested in. In public disclosure, it does not. What do you think of the issue that we are interested in? The United States does not take a position on the public disclosure bar issue, and I'm not prepared to address it today before the Court. Why? Because I was not authorized to make any statements on behalf of the United States on the public disclosure bar issue or statement of interest in the district court. The United States has not gone after the bank to collect any money or anything of that kind, has it? The United States has, I believe, as you said, entered into some consent decrees with the bank, but not under this particular regulation, as to my knowledge. Your motion seeking to appear as amicus curiae, I mean, I looked at your brief just as you got up, it says amicus curiae on behalf of neither party, and I guess that taking a position at this point on the public disclosure point would not be consistent with the representation you earlier made. That's correct, and that's why we're not taking a position today. What is it you want us to know that you are concerned that we might not know about? What's the point of your being here? What's the point of this? The point of us being here is that we want— Other than we let you be here. For which we are very grateful, Your Honor. Our interest in this case is to ensure that there still is a venue under the False Claims Act to pursue claims against mortgagees who violate the particular regulation here at issue, that they have to engage in loss mitigation. The failure to engage in loss mitigation results in a trouble damages penalty that recoups that payment. What appellees have argued is that because there is an incontestability provision, that the initial FHA insurance benefits will be made and then are subject to recoupment and a trouble damages penalty that insulates them from False Claims Act liability. We disagree with that theory and we wanted to present argument to explain to the court why it should not adopt that novel theory. Sounds like our focus is elsewhere, doesn't it? Which is perfectly fine, Your Honor, if there are no further questions. Thank you. All right, Mr. Schilling, with your 15 minutes, which I tried to wrest from you, apparently. Thank you, Your Honor. Good morning and may it please the court. Andrew Schilling from the law firm of Buckley Sandler on behalf of U.S. Bank. The district court correctly dismissed this case as barred by the public disclosure bar of the SCA. There are two policy reasons that animate the public disclosure bar. One is that on the one hand, the law should encourage true whistleblowers with inside information to come forth and alert the government to misconduct that the government might not otherwise discover. And two, on the other hand, the statute can't go so far as to encourage parasitic lawsuits that basically repackage information that's already in the public realm and then seek to benefit from the bounty provisions of the False Claims Act. The district court's decision struck the right balance in this case. Able is not the model whistleblower, as the district court referred to it. The allegations that Mr. Sandberg Champion is focusing on today, the knowing submission of false claims, go to the knowledge of the bank. Able, as a whistleblower, has no knowledge of the bank. It's never been in the bank unless they went to the ATM. What are your responses to his main two points? The first one is that prior consent decrees and disclosure related to investigations that went across all mortgages, and the FHA ones have a lot of very specific requirements, and that's what this lawsuit's focused on. So what about that point? Yes, Your Honor. The case law supports the view, and this is particularly in the Dingell case and in the Medtronic case, that where the prior public disclosure is broad, that would bar a more narrow disclosure in the key tamp. The example that Able uses in its brief from the Dingell case, where they say, well, a disclosure and a prior disclosure with respect to a car's engine wouldn't bar a subsequent case about car seats. And what the Dingell case then went on to say was, but if the prior public disclosure is at a broader level of generality and is about the car, it would bar a subsidiary issue such as the car seats or the car engine, and that's exactly what we have here. The OCC consent order, the interagency report were about the bank, the bank's residential mortgage loan program, specifically its loss mitigation program. It was not limited to certain types of products. The bank has a number of products. It has FHA-insured loans. It has VA-insured loans. It has loans that are sold to Fannie. It has loans that are sold to Freddie. It has loans that it keeps on its own book. The interagency review and the consent order broadly covered all of it. They would probably respond by saying, okay, I get your car level of generality point, but this is really about different models of cars because there really are quite different requirements for loss mitigation under some of these programs versus others. So how do you respond to that? I mean, because that is their point, that the FHA ones have a bunch of proactive disclosure requirements or loss mitigation requirements that might not have been required in these other areas. Yes, Your Honor, and each of the programs has its own unique requirements, and the interagency review and the consent order were not limited to that. In the consent order that remedied the, quote, deficiencies found in the investigation, they specifically required that servicing guidelines of the FHA be part of the remedy. And so those specific requirements were captured as part of the process. So the fact that there are different FHA standards, there's also different VA standards, but it can't be the case that the day after this lawsuit someone could then file a lawsuit and say, oh, and now we're going to sue over the VA loans of U.S. Bank, right, and argue there that, well, VA loans have different regulations. They do have different regulations. But where is the ending point? That's why the law doesn't want to have parasitic suits going forward because then, as the Dingell Court and the Medtronic Court pointed out, you'd have plaintiffs who are then taking a general public disclosure and then parsing it finally and finding specific applications of that issue that were not previously public disclosed. So is there any ongoing litigation about this that the government is involved in or investigating, or is the problem over so far as the banks are concerned? Well, Your Honor, it's a broad question. In terms of U.S. Bank, obviously the Justice Department investigated for several months the allegations in this key TAM, and at the end of that investigation declined to intervene in this case. There was also – pardon me? Of course you know this file. Yes, Your Honor, as far as I know. And there are also investigations that the Justice Department had done with respect to the mortgage origination, particularly with respect to FHA loans, that was actually ongoing simultaneous to the investigation that the Justice Department was doing here with respect to servicing. And I think the larger point we were making in the brief was on the issue of encouraging true whistleblowers to come forward and tell the government something it didn't already know. Certainly the Justice Department, the state attorney generals, the regulatory agencies, the OCC, and the Fed, they were all over the issue of loss mitigation, not only for U.S. Bank, but specific to U.S. Bank. Didn't Congress several years ago investigate the problem in some detail about why the mortgage situation arose and found out that there was a good bit of negligence and some skullduggery involved in the process and then adopted – I forgot the name of the law – but adopted a law that didn't really do too much but was focused on the problem at least? Congress certainly did investigate the causes of the financial crisis. The Dodd-Frank law in particular was passed as a result of that. And they uncovered some of these kinds of problems? It's certainly been widely reported that these types of problems, you know, with respect to loss mitigation, with respect to foreclosure, with respect to not contacting borrowers before you foreclose. I'd point out with respect to the remedy in the OCC case. That was uncovered in the congressional investigation? Your Honor, I'm actually not that familiar with the details of the congressional investigation, which I think may have been broadly focused on the financial crisis as a whole  a congressional investigation, which I don't know how thorough it was, but supposedly it was fairly thorough. It would be hard to do such an investigation without disclosing some of these kinds of problems, like in this case of no face-to-face meetings and so on, right? I would think that's right, Your Honor. You're not relying on that? No, Your Honor, we're not relying on that. You're just relying on this consent decree? We're relying on a number of things, including the consent decree. We're also relying on a series of court cases that had been brought specifically on the face-to-face rule, specifically alleging, you know, failure to comply with FHA regulations, including against you. This is really a question for both of you, but let's say, I realize this is a consent decree and not a class action, so the three specific plaintiffs involved in the key team action wouldn't have been covered in that sense by the consent decree, but let's just say, for the sake of argument, consent decrees are enforceable by third parties, by individuals. Could these three individuals have brought an action to enforce a violation of the consent decree? Your Honor, I don't know the answer to that. Well, you should. My question has nothing to do with whether an individual can enforce a consent decree. I'm asking you whether the consent decree by its terms would cover these plaintiffs and what happened to them by U.S. Bank. It would, Your Honor, because of the remedy that says that going forward, part of legal requirements, the phrase legal requirements being a defined term in the OCC consent order, the bank has to ensure compliance with the legal requirements, and those requirements include FHA servicing requirements. And so these particular allegations would be FHA servicing and loss mitigation requirements. They're part of the legal requirements, and therefore it's subsumed within the scope of that phrase in the consent order. Presumably the individuals could have also sought relief on their own behalf had they done so in a timely way in the context of the foreclosure proceedings, correct? Correct, Your Honor. As the other plaintiffs had done, the other plaintiffs had raised as a defense. depending on what the particular opportunity to set aside the foreclosure might be, right? Right, Your Honor. The state court cases we cited were precisely that, where a borrower said, wait a second, U.S. Bank, you can't foreclose on me in Ohio because you didn't comply with HUD's face-to-face rule. But we're not really allowed to use state court cases anymore, right? At least it's complicated after the health care law. A couple of points on that, Your Honor. It's complicated after the health care law. Yes. The allegations here are failures of loss mitigation and failures of complying with the face-to-face rule, that with respect to the only three borrowers out of the 22,000 that they ultimately seek to recover for, as to those three, those violations allegedly occurred in 2009, which would have been before the change in the law in 2010. So they haven't alleged a failure to comply with the face-to-face rule on loss mitigation after that, except to the extent that they say that these three borrowers are characteristic of every borrower that U.S. Bank has ever dealt with for the last 10 years, straight through to the date of the complaint. So on that issue, I think that these three borrowers are the only ones that we have any facts about.  But following the point, if it was 2009 and there was a requirement to do face-to-face before 2010, wouldn't it be unfair to – oh, so I see what you're saying. So that was when the state court stuff was relevant. Correct. I got it. And even since then, Your Honor, since 2010, the articles that were about this whole series of cases in state court with respect to the face-to-face issue qualify as news articles. And so, therefore, those would be captured anyway, even if you couldn't rely on the state court cases themselves. There have been some federal lawsuits, too, about similar problems of not complying with the act in the mortgage situation and efforts to get some relief for debtors in federal courts, most of which have been unsuccessful, I think. But haven't there been a lot of federal cases in all of the circuits about that? There's certainly been a lot of federal litigation over the issues writ large with respect to foreclosures. We're not citing any of those specific or relying on them in connection with this appeal, but certainly there's been no shortage of litigation. Some of them might not be implicated here, but it seems to me we've dealt in a number of contexts with this, you know, what the requirements are on the part of the mortgagor when, you know, foreclosure is initiated. It seems like that was one of the recurring issues. Certainly. Yes, Your Honor. I must have had just over the last few years 10 or 15 of these cases. I mean, there are various and sundry things that haven't been done, but there has been a widespread series of cases about it. Yes, Your Honor. Agreed. With respect to the issue that the government has raised, would you like me to go on to that issue or would you like to stick with where we are? I think it's your judgment, Kyle. Just very briefly, Your Honor, the district court clearly was incorrect when it applied this court's precedence to find that there was a condition of payment here. This circumstance is the exact opposite of a condition of payment. The law, at least until the Supreme Court thinks about it and the issue that the Supreme Court is going to think about it is actually broader than I think that was mentioned, they're actually going to consider the validity of the entire implied certification theory. And then, assuming it finds that theory viable, it's then going to consider sort of the contours of it. But as an initial matter, it's going to decide whether or not there's an implied certification theory at all. And on that point, I would point out that we're accused in the government's brief and in Abel's brief of imposing talismanic significance on this whole condition of payment issue and focusing on judicially crafted language such as conditions of payment. But as the Supreme Court will be addressing, the entire concept of an implied certification is judicially created. Counsel, exactly what was U.S. Bank doing in connection with mortgages? It was buying mortgages from brokers? What was it? It was acting as a broker and then selling it to for the tranche suppliers to the market. What was the U.S. Bank doing exactly in the mortgage market? With respect to the allegations here, U.S. Bank was originating FHA loans and then servicing FHA. As a broker? No, Your Honor, as the lender. Yeah, but, I mean, it was looking for loans, mortgage loans, right, to make. And then was it selling those loans to others? With respect to the FHA loans, it was at a retail level originating loans to borrowers and then endorsing those loans for FHA insurance. And at that point, they could either sell the loan or retain the loan depending on its business needs. It did both? I'm sure it did both. I'm not sure it's in the record here, Your Honor. We don't know how, we don't know the volume of such mortgages based on this record, right? Based on the record, the plaintiffs have alleged that there's more than 22,000 conveyance claims that have been made over the last 10 years in which the U.S. Bank apparently was paid $2.3 billion, which is part of what the relators are seeking. Unless the Court has any further questions, we'd rely on our brief. Thank you very much. I would like to follow up on a thread that Judge Sutton began talking about, that we're alleging violations with respect to different cars. And I think that's correct. And not only are they different cars, but they're cars with different requirements. This is essentially the same as this hypothetical. Imagine that the government had investigated a car manufacturer for fueling problems with conventional cars. And the car manufacturer entered into a settlement with the government in which it agreed to comply with all rules, all federal rules, including those rules dealing with fuel intake. Now imagine that we had uncovered problems with that same manufacturer's electric cars. Entirely different cars, entirely different issues with fuel. What if the government allegation was that the car company was engaging in fraudulent loans with respect to all of its car sales? Then the Keaton plaintiff came back and said, we're focusing on Mustang sales. And the public disclosure bar would cover that. That would be a situation in which... That's more analogous to this case than the electric. I don't think it is. Because there's nothing in the prior... It's more like the government said, we're alleging fraud with respect to this specific thing. And then we're... Actually, it was not even fraud. But we're respecting wrongdoing with respect to the specific thing. And then we're going to have a blanket remedy that covers everything. That's what they're pointing to here. They're not pointing to a situation in which the government actually alleged anything regarding FHA loans. They're just saying the remedy was broad enough that it could have covered it. Okay, so I get the point you're making. I don't think I got it completely before. But give me the best case that if I read it, I'll say, you know, that's a pretty fair distinction between allegations by the government or plaintiffs versus remedy and that you can't use the remedy as the scope of the public disclosure or prior disclosure. What's the best case to help me address that? Frankly, I haven't seen any cases that deal with that. And that's why I go back to the words of the statute because the statute points to allegations. The statute says allegations. It doesn't say what remedies were ordered for the allegations. It says the allegations. And in that respect, I also want to get to the distinction that... I want to ask you a couple of questions. Yes, please. You get to a stopping point, okay? I'll invite them right now then. Do you recall the congressional investigation into the mortgage market? Because, you know, the allegation was that it was the mortgage market that caused the Great Recession. And there's a lot of information developed in the course of congressional investigation. Yes. And a law was adopted that doesn't seem to have rewarded mortgage holders who were perhaps mistreated in the process. But wasn't all this kind of thing developed inside that investigation that we're talking about here? Well, that's a very interesting question in the sense there has been so much discussion about it. There have been congressional investigations. There have been news articles. There have been government investigations. And yet not one of them can U.S. Bank come forward with that actually details the kind of fraud that we're describing, which, you know, is a remarkable thing. I mean, they're speaking in terms of mortgage servicing and foreclosure. It's writ large. They can't point to a single instance in which anyone has previously disclosed the type of fraud that we're describing, which is the knowing submission of FHA insurance claims without complying with the very FHA-specific rules. They can't point to a single incident of that. They have to rely on these broader mortgage industry things. And I think that's very telling, Judge Merrick. As far as you know, there was no development of that in the congressional investigation. I couldn't tell you for certain, but I will say this. I suspect if there had been, Mr. Schilling here would have put it before you. No, that's okay. Anything further? Yeah. May I just address one thing? Leave your address. Okay. Thank you, Your Honor. All right, we thank you all for your argument, and we'll consider the case carefully. The court may call the next case.